UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-23275-ALTMAN/O'SULLIVAN

WILLIAM B. NUNEZ,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the plaintiff's Motion for Summary Judgment (DE # 21, 5/7/2021) and the defendant's Motion for Summary Judgment (DE # 26, 6/4/2021). The plaintiff seeks a reversal and remand for further administrative proceedings. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 405(g), and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration. This matter was referred to the undersigned by the Clerk's Notice of Judge Assignment (DE # 2, 8/6/2020). Having carefully considered the filings and applicable law, the undersigned recommends that the plaintiff's Motion for Summary Judgment (DE # 21, 5/7/21) be **GRANTED**, the defendant's Motion for Summary Judgment (DE # 26, 6/4/2021) be **DENIED**, and the matter be remanded in accordance with the following Report and Recommendation.

## PROCEDURAL HISTORY

On March 26, 2019, William B. Nunez (hereinafter, "the plaintiff"), applied for a period of disability, which included, Disability Insurance Benefits, and Supplemental Security Income. (Tr. 231).[1] The plaintiff's application was denied initially on May 15, 2019, and upon reconsideration on October 10, 2019. (Tr. 21, 67-77, 130). The plaintiff appeared for a hearing before an administrative law judge (ALJ) on May 20, 2020. (Tr. 40, 42). On May 29, 2020, the ALJ found the plaintiff was not disabled. (Tr. 35). On July 16, 2020, the appeals council denied the plaintiff's request for review. (Tr. 1-3).

## FACTS

### I. Plaintiff's Background

The plaintiff was born in February 1978 and was 41 years old at the time of his application for Disability Insurance Benefits on March 19, 2019. (Tr. 241). The plaintiff alleges his disability began on April 1, 2018. (Tr. 270).  The plaintiff attained a seventh-grade education in Cuba and is illiterate in English. (Tr. 47, 50).[2] The plaintiff has a driver's license but does not drive.  (Tr. 58). The plaintiff lives with his mother and stepfather. (Tr. 57).  Prior to the alleged disability the plaintiff worked in the fast-food industry and as a parking lot attendant. (Tr. 47).

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration record filed February 16, 2021. See Social Security Transcript (DE # 17, 2/16/2021). The page numbers listed on this document refer to the bold numbers found in the lower right-hand corner of each page on the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page number.

[2] During his hearing testimony, the plaintiff indicated he had an education up to seventh grade. (Tr. 50). In the ALJ's opinion, however, the ALJ indicated the plaintiff had a tenth-grade education. (Tr. 28).

## II. Summary of Medical Evidence

The plaintiff was treated at New Horizons Community Mental Health Center ("NHCMH"), a mental health clinic, for the first time on October 15, 2016. (Tr. 402). After a break in treatment, the plaintiff returned to NHCMH and was treated by Sandra Fujita, ARNP, FNP-BC, PMHNP-BC,[3] ("NP Fujita") continuously from April 2018 to about April 4, 2020. (Tr. 48, 537).

### A. New Horizons Community Mental Health Center (NHCMH)

On October 4, 2016, the plaintiff was diagnosed with schizoaffective disorder, bipolar type. (Tr. 549). On October 15, 2016, the plaintiff's mental status examination stated that he appeared to be agitated, anxious, had a euphoric mood, spoke loudly, irrational, showing delusional thought content, and complained of auditory hallucinations. (Tr. 385-87). The plaintiff would self-medicate with crack cocaine in an attempt to alleviate the severity of the episodes, however, the use of the crack cocaine resulted in the plaintiff developing atypical depressive disorder. (Tr. 70, 388). On April 23, 2018, the plaintiff was diagnosed with other psychoactive substance dependence, uncomplicated. (Tr. 549).

The plaintiff was Baker Acted and hospitalized from June 7, 2018, to June 12, 2018, for "Atypical depressive disorder after using cocaine." (Tr. 70). During the plaintiff's hospitalization, Dr. Richard Douyon, a psychiatrist, documented normal speech and orientation and determined that the plaintiff was not a danger to himself or others. (Tr. 372, 385-86). The plaintiff denied any suicidal thoughts and was able to acknowledge a goal of stable sobriety. (Tr. 357-63, 372, 385-88).

---

[3] PMHNP-BC is the abbreviation for board-certified psychiatric mental health nurse practitioner. ARNP stands for Advanced Registered Nurse Practitioner and FNP-BC stands for board-certified psychiatric mental health nurse practitioner.

On October 5, 2019, the plaintiff returned to NHCMH for a follow up visit with NP Fujita. (Tr. 549). NP Fujita described the plaintiff as alert and cooperative and had normal speech, appearance, and motor behavior. (Tr. 548). The plaintiff showed no signs of hallucinations or suicidal thoughts. Id.

**B. Dr. Alejandro J. Arias, Ph.D.**

On October 3, 2019, the plaintiff was seen by Dr. Alejandro J. Arias, Ph.D. (Tr. 526). Dr. Arias conducted a consultative psychiatric exam, in which the plaintiff reported to Dr. Arias that he tried to kill himself from overuse of crack cocaine and also by jumping in front of a car. (Tr. 527). Dr. Arias conducted an interview to attain the plaintiff's psychiatric history and also noted that the plaintiff was seen at NMCMH on a monthly basis. Id.

Dr. Arias confirmed NP Fujita's original diagnosis of bipolar disorder and determined that the plaintiff would benefit from supervision in managing personal funds. (Tr. 529). However, Dr. Arias determined the plaintiff was cooperative and motivated, having good eye contact and good speech and language skills. (Tr. 528).

**C. Dr. Jorge Pena, Ph.D.,**

The first state agency review of the plaintiff's file occurred in May 2019. Dr. Jorge Pena, Ph.D., a psychologist, completed a Psychiatric Review Technique and Mental RFC form indicating that the plaintiff had "moderate" difficulties in understanding, remembering, or applying information, "mild" difficulties in maintaining concentration, persistence or pace, and "mild" limitation in adapting or managing himself. (Tr. 73-75). Dr. Pena concluded that the plaintiff had moderate limitations in his ability to understand and follow detailed instructions, maintain attention and concentration for long periods, perform activities within a schedule, maintain regular

attendance, and complete a normal workday without interruptions from psychologically based symptoms. (Tr. 74).

### D. Dr. Nancy Hinkeldey, Ph.D.,

In the latter part of 2019, Dr. Nancy Hinkeldey, Ph.D., completed the second State agency review of the plaintiff's file (Tr. 92-104) and completed a Psychiatric Review Technique form for the plaintiff. (Tr. 97-103). On October 8, 2019, Dr. Hinkeldey indicated that the plaintiff has "moderate" limitation in his abilities to understand, remember, or apply information, as well as concentrate, persist or maintain pace.  (Tr. 98).  In a Mental Residual Functional Capacity Assessment dated October 8, 2019, Dr. Hinkeldey further indicated that the plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentrate for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms without an unreasonable amount of rest periods. (Tr. 101-102).

### E. Adult Disability Report, Function Report and Contact by DDS with the Plaintiff

The Social Security Record contains an undated Adult Disability report completed by the plaintiff.[4] (Tr. 269-276).  The Adult Disability Report provides information regarding the plaintiff, including: (1) general information about the plaintiff; (2) a non-medical individual to contact who has knowledge regarding the plaintiff's medical conditions; (3) the plaintiff's medical conditions; (4) the plaintiff's work activity; (5) the plaintiff's education and training information; (6) the plaintiff's job history; (7) the plaintiff's medications; (8) the plaintiff's medical treatment; and (9) the plaintiff's other medical information. (Id).

---

[4] The Adult Disability Report is undated but is contained in the Social Security record just before the April 3, 2019, Adult Function Report completed by the plaintiff.

The plaintiff completed an Adult Function Report on April 3, 2019.  (Tr. 277-284).  The April 2019 function report indicated that the plaintiff does not like people, thinks everyone will hurt him, thinks everyone talks badly about him, that he gets aggressive with co-workers, sleeps late, walks alone, sometimes needs to be reminded to bathe, and forgets how and when to take his medicine. (Tr. 277-279).  The plaintiff indicated on the Function Report that it is difficult for him to follow instructions, complete tasks, and concentrate.  (Tr. 282).  The Function Report also indicates, however, that the plaintiff does not require reminders to go anywhere and is able to go out independently.  (Tr. 281).  The plaintiff also indicated in the Function Report that he has no issues with the police. (Tr. 283).

On August 28, 2019, Thelma Ubaka completed a Report of Contact regarding the plaintiff, directed to the Department of Disability Services.  (Tr. 301-302). The form indicates that the August 28, 2019, contact was a "recon contact" and was made via telephone.  (Tr. 301).  The plaintiff indicated to Ms. Ubaka that he was able to take public transportation and that he spent his time walking around the neighborhood and watching television. Id.

### III. <u>Hearing Testimony</u>

A hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2020. (Tr. 40). The plaintiff was represented by counsel. <u>Id.</u> The plaintiff testified at the hearing (Tr. 49-59). A vocational expert ("VE")[5] also testified at the hearing. (Tr. 59-65).

### IV. <u>The Plaintiff's Hearing Testimony</u>

At the hearing, the plaintiff testified that he is originally from Cuba, that he is a permanent resident of the United States, that he is literate in Spanish, but not in English, and was educated up to the seventh grade in Cuba. (Tr. 49-50). The plaintiff stated that he last worked in 2017 cutting

---

[5] A VE "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2004).

lawns for friends. Id. Previously, the plaintiff worked at fast-food restaurants. (Tr. 51). The plaintiff indicated that he prepared food and cleaned the back of the restaurants and that he was employed full-time. (Tr. 52). The plaintiff also previously worked in a laundry room, a motel, and as a parking valet. (Tr. 52-53). The plaintiff stated that he was fired from jobs due to problems with his supervisors. (Tr. 53). The plaintiff was fired from his last job because he got agitated and out of control. (Tr. 54).

The plaintiff testified that at the time of the hearing he was receiving treatment and had been receiving treatment regularly since 2016. Id. The plaintiff stated he had prior issues with crack cocaine but had not used crack cocaine since before he applied for disability. Id. The plaintiff indicated he experiences good days and bad days and cannot return to work as a valet or a fast-food employee. (Tr. 55). The plaintiff noted that he was very depressed because of the illnesses going around and that his doctor has changed the dosage on his medication. (Tr. 56). The plaintiff stated that he was arrested several times and had gone to jail. (Tr. 56-57). The plaintiff noted that he lives with his mom and stepfather, but he does not help his mother with household chores and running errands, and that his mother has known about his problems since he was a child. (Tr. 57-58).

## V. **Vocational Expert (VE) Testimony**

At the hearing, the ALJ asked the VE to classify the plaintiff's previous work experience and provide an explanation of the skill and effort level required for those jobs. (Tr. 60). The VE classified the plaintiff as a fast-food worker as well as a parking lot attendant. (Tr. 60).

The ALJ posed the following hypothetical to the VE.

Assume a hypothetical individual of the claimant's age and education, with the past jobs that you've described. Further, assume for this hypothetical, the individual has no exertional limits. However, this individual can have no exposure to hazardous machinery or mechanical parts, and no unprotected heights; no requirement to

operate a motor vehicle on the job. Assume this hypothetical individual can understand and carry out simple and detailed, but uninvolved, oral and written and diagrammed instructions, but not at a production rate or pace. This individual could occasionally interact with coworkers, supervisors, and the public, and can maintain concentration for at least two hours at a time; on task 97 percent of the workday. Stated differently, off-task three percent of the workday. Would a person with these kinds of abilities be able to perform the claimant's past work?

(Tr. 60-61). In response, the VE indicated that such a person could not perform the plaintiff's past work. (Tr. 61).

The ALJ also asked the VE whether there would be any jobs available in the national economy for a person with the plaintiff's abilities. Id. In response, the VE stated that if a person is off task daily, there would not be any jobs. Id. The VE also noted that if the person is off task sporadically throughout the month, there would be jobs available. Id. The VE stated that employers include various factors, including, but not limited to, tardiness, absences, and insubordination with off-task behavior. (T. 62-63). After an employee accumulates a given number of these factors, the employee would be fired and unable to remain employed. Id. The VE continued that being off task three (3) percent daily would result in an employee being fired. Id. The VE indicated that an individual off-task sporadically could work as a hand packager, a cleaner II, and a price tagger/marker. (Tr. 61-62).

The ALJ asked the VE to explain the reasoning for his opinion that being off task 3% of the workday would prevent the plaintiff from working. The VE testified that "in today's work environment . . . employers give out x amount of [points] to a worker . . . and those points will be deducted if the person is late – arrives late, leaves early, insubordination, absences, or any other factor that the employer deems appropriate. The more times that the person is off task, the more points that person will lose. And once they reach a threshold established by the employer, then the person will no longer be able to work" (Tr. 63). The VE further testified that, for unskilled

work, employers generally tolerated between five and seven absences in a calendar year. (Tr. 63).

## THE ALJ'S DECISION MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity because of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C § 423(d)(1)(A). The impairment(s) must be severe, making the plaintiff "unable to do his previous work … or any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C § 423(d)(2)(A).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a). The ALJ must first determine whether the plaintiff is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). If so, a finding of non-disability is made, and the inquiry ends. Id.

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. If the plaintiff does not, then a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Third, the ALJ compares the plaintiff's severe impairments to the impairments listed in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520(d), Subpart P, Appendix I.[6] If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d). If it does not, the analysis proceeds to the next step.

---

[6] Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work." Gibson v. Heckler, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985).

Fourth, the ALJ must determine whether the plaintiff has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(f). RFC is defined as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). This determination considers "all relevant evidence," including medical evidence, the claimant's testimony, and the observations of others. Id. If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at step five that there is other work available in the national economy which the plaintiff can perform. Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018); 20 C.F.R. § 404.1520(e)-(f).

At Step five (5), the ALJ must determine whether the plaintiff is capable of doing any other work.  The ALJ must consider the plaintiff's RFC, age, education, and work experience and determine if the plaintiff can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4)(v).  If the plaintiff can make an adjustment to other work, the ALJ will find them not disabled.  Id.  If the claimant cannot make an adjustment to other work, the ALJ will find them disabled.  Id.

**THE ALJ'S DECISION**

In a decision dated May 29, 2020, the ALJ found the plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 35). At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date, April 1, 2018. 20 C.F.R. § 404.1571. (Tr. 23).

At step two, the ALJ found the plaintiff had the severe impairment of bipolar II disorder. (Tr. 23-24). The ALJ also found that the plaintiff had the following non-severe impairments: (1) right wrist distal fracture; and (2) substance abuse. (Tr. 24).

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). (Tr. 25). The ALJ then found that the plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: never have exposure to hazardous machinery/mechanical parts, work at unprotected heights, and operating a motor vehicle. (Tr. 27).

At step four, the ALJ determined that the plaintiff is unable to perform any past relevant work. (Tr. 32-33). At step five, the ALJ indicated that considering the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (20 C.F.R. § 404.1569 and 404.1569(a)). (Tr. 33).

## STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, the Court must determine whether it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. See Wolfe v. Charter, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding the reviewing court must not reweigh the evidence nor substitute their discretion for that of the ALJ). On judicial review, decisions made by the Commissioner of Social Security are conclusive if supported by substantial evidence and if the correct legal standard was applied. See Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir.

1996). In determining whether substantial evidence exists, the "court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

The Court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). However, the Court may not decide the facts anew, reweigh the evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. See Miles, 84 F.3d at 1400; see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). In sum, factual evidence is presumed valid, but the legal standard applied is not. See Martin, 894 F.2d at 1529. The commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

## **ANALYSIS**

The plaintiff contends that the ALJ improperly relied on VE opinions not admitted into the record as a basis for discounting the VE testimony received at the hearing, and that the ALJ's RFC

assessment does not properly account for the plaintiff's "moderate" limitations in adapting or managing oneself as part of the psychiatric review technique evaluation. (DE # 21, 5/7/21).

The defendant asserts that "the plaintiff failed to meet his burden of proving that he was disabled within the meaning of the Social Security Act." (DE # 26, 6/4/21 at 6).  The defendant also asserts that substantial evidence supports the ALJ's RFC.  Id.

## I. The ALJ's Reliance on Evidence Not Admitted into the Record

At the hearing held before the ALJ in this matter, the ALJ asked the VE to classify the plaintiff's previous work experience and provide an explanation of the skill and effort level required for those jobs. (Tr. 60). The VE classified the plaintiff as a fast-food worker as well as a parking lot attendant. (Tr. 60).

The ALJ posed the following hypothetical to the VE.

Assume a hypothetical individual of the claimant's age and education, with the past jobs that you've described. Further, assume for this hypothetical, the individual has no exertional limits. However, this individual can have no exposure to hazardous machinery or mechanical parts, and no unprotected heights; no requirement to operate a motor vehicle on the job. Assume this hypothetical individual can understand and carry out simple and detailed, but uninvolved, oral and written and diagrammed instructions, but not at a production rate or pace. This individual could occasionally interact with coworkers, supervisors, and the public, and can maintain concentration for at least two hours at a time; on task 97 percent of the workday. Stated differently, off-task three percent of the workday. Would a person with these kinds of abilities be able to perform the claimant's past work?

(Tr. 60-61). In response, the VE indicated that such a person could not perform the plaintiff's past work. (Tr. 61).

The ALJ also asked the VE whether there would be any jobs available in the national economy for a person with the plaintiff's abilities. Id. In response, the VE stated that if a person is off task daily, there would not be any jobs. Id. The VE also noted that if the person is off task sporadically throughout the month, there would be jobs available. Id. The VE noted that employers

include various factors, including, but not limited to, tardiness, absences, and insubordination with off-task behavior. (T. 62-63).  After an employee accumulates a given number of these factors, the employee would be fired and unable to remain employed. Id.  The VE continued that being off task three (3) percent daily would result in an employee being fired.  Id. The VE indicated that an individual off-task sporadically could work as a hand packager, a cleaner II, and a price tagger/marker. (Tr. 61-62).

The plaintiff notes that the VE who testified at the hearing in this matter opined that under the ALJ's RFC and hypothetical posed, the plaintiff was unable to work.  (Tr. 60-63). The plaintiff asserts that the only support offered by the ALJ for disagreeing with the hearing VE's opinion was the opinions of other VEs the ALJ had heard in other hearings.   The plaintiff also asserts that the ALJ improperly relied on VE opinions not admitted into the record as a foundation for disregarding the hearing VE's testimony.  The plaintiff further asserts that his right to examine the evidence and cross examine the VEs who did not testify in this case was violated for several reasons.  Those reasons include: (1) neither the plaintiff nor the plaintiff's attorney were part of those hearings; (2) the VEs who offered the opinions were not identified; and (3) the plaintiff was not permitted to cross-examine those VEs.  The plaintiff maintains that this behavior by the ALJ was the equivalent of sending post-hearing interrogatories to a VE and receiving responses to those interrogatories that differed from the hearing VE's testimony.  Then, admitting the post-hearing responses into the record, and issuing a decision unfavorable to the plaintiff, without complying with evidence procedures outlined in HALLEX.[7]

In support of his assertions, the plaintiff relies on Marin v. Comm'r of Soc. Sec., 535 F.Supp. 1263 (M.D. Fla. 2008).  In Marin, the plaintiff claimed he suffered prejudice when,

_____

[7] HALLEX is the agency's hearings, appeals and litigation law manual.

during a hearing, the ALJ only permitted the plaintiff's attorney to ask the VE hypothetical questions on cross-examination.  Id at 1264.  The ALJ in Marin instructed the plaintiff's attorney to only ask hypothetical questions on cross-examination.   The ALJ ended the hearing when the plaintiff's attorney indicated he was unable to obtain the information he sought through hypothetical questions.  Id.  The defendant argued in Marin that under HALLEX the ALJ could limit cross examination in any manner.  Id. The Marin court opined that HALLEX did not trump constitutional due process rights.  Id at 1265.  The Marin court found that the plaintiff's attorney should have been allowed to ask direct questions of the VE, not just hypothetical questions.  The Marin court also found that the ALJ prevented the plaintiff's attorney from performing a material cross-examination.  Moreover, the Marin court found that the ALJ's opinion, which relied on the VE's testimony, was untested.  Id. Accordingly, the Marin court found that the restrictions placed on the plaintiff's attorney for cross-examination were prejudicial.  Id at 1266.  See also, Demenech v. Secretary of the Dep't of Health & Human Servs., 913 F.2d 882, 884-85 (11th Cir. 1990) (an ALJ abuses his discretion and denies the plaintiff due process rights by disallowing the cross examination of a post-hearing doctor that the ALJ significantly relies on in his decision).

In addition, the plaintiff cites to Howard v. Astrue, 505 F. Supp. 2d 1298 (S.D. Ala. 2007), in support of his position.  In Howard, after an ALJ hearing, the ALJ requested a second physical capacities evaluation from a doctor. The claimant in Howard wanted a supplemental hearing to cross-examine the doctor on the new report.  Howard at 1301.  The ALJ did not permit the supplemental hearing and recommended deposing the doctor.  Id at 1301-02. The court found that the ALJ violated HALLEX by not having the supplemental hearing.  This was because the claimant was not able to cross-examine the consulting doctor about evidence that was considered by the ALJ when forming his medical source statement. The Howard court remanded the case for further

administrative proceedings because the ALJ did not follow the HALLEX internal procedures regarding the development and receipt of post hearing evidence. Howard at 1302. The court indicated that under HALLEX, if post-hearing evidence is received from someone other than the claimant or the claimant's representative and the plaintiff requests a supplemental hearing, one must be held, unless the new evidence supports a completely favorable decision. Id. The plaintiff notes that "although the HALLEX does not carry the force of law," agencies must adhere to their own procedures where people's rights are affected and if a violation of the HALLEX prejudices a claimant, the result should not stand. Id. (citing Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000)). The Howard court concluded that the plaintiff suffered prejudice because he was unable to cross-examine the consulting doctor. Id. at 1302.

The defendant asserts that substantial evidence supports the ALJ's finding at Step 5 of the sequential evaluation process and that the plaintiff failed to meet the burden of demonstrating he was disabled under the Social Security Act.  See 42 U.S.C. §§ 423(d)(1)(A), (d)(5)(A), 1382c(a)(3)(A), (a)(3)(H)(i); 20 C.F.R. §§ 404.1512(a), 416.912(a); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir.2003). The defendant notes that the ALJ asked the VE to explain the reasoning for his opinion that being off task 3% of the workday would prevent the plaintiff from working.  The VE testified that "in today's work environment . . . employers give out x amount of [points] to a worker . . . and those points will be deducted if the person is late – arrives late, leaves early, insubordination, absences, or any other factor that the employer deems appropriate. The more times that the person is off task, the more points that person will lose. And once they reach a threshold established by the employer, then the person will no longer be able to work". (Tr. 63). The VE further testified that, for unskilled work, employers generally tolerated between five and seven absences in a calendar year. (Tr. 63).

The defendant further notes that the ALJ listed specific jobs in the national economy named by the VE that the plaintiff could do.  The defendant indicates that the ALJ discussed her reasons for discounting the VEs testimony that being off task 3% of the day would prevent the plaintiff from working.  The defendant further indicates that the ALJ noted that employers would allow an employee to be off task 10% of the day. The Court in Pinion v. Comm's of Soc. Sec., 522 F. App'x 580 (11th Cir. 2013), held that the ALJ properly discounted the VE's testimony based on a doctor's opinion, when the VE testimony was not bolstered by the evidence.  Id at 583.  Citing to Pinion, the defendant asserts that the ALJ did not err in disregarding parts of the VE's testimony.  The defendant asserts that, on the contrary, the ALJ correctly considered the testimony of the VE together with the evidence in the record and stated reasons for not crediting certain parts of the VE's testimony related to the plaintiff's off task time.  Specifically, the defendant notes that the ALJ addressed the off-task testimony in her opinion and identified the jobs of hand packager, cleaner II, and price tagger for someone off task 3% of the day sporadically.  The defendant notes that the ALJ rejected part of the VE's testimony because it was reliant on a point system created by individual employers.  The ALJ also indicated that the VE's testimony was not logical because people need to do things such as go to the bathroom which would result in off task time.  Moreover, the ALJ indicated that 14 minutes (3%) is a reasonable amount of time to be off task.  The defendant notes that in addition to these reasons, the ALJ also indicated that the hearing VE's testimony was not consistent with the testimony of other VE's that employers would allow employees to be off task 10% of the time.

The defendant argues that the plaintiff's reliance on Marin is not persuasive and that this matter is different from Marin, because here the ALJ did not limit the plaintiff's ability to cross examine the VE.  Moreover, the defendant asserts that the plaintiff is unable to demonstrate

prejudice as a result of the ALJ's disagreement with a portion of the VE's testimony because the ALJ provided reasons for the disagreement.  See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (finding that the burden of demonstrating that an error is detrimental usually rests on the one disputing the determination by the agency); Kelly v. Heckler, 761 F.2d 1538, 1540-41 (11th Cir. 1985) (even when there is an unsatisfactory hearing, if the plaintiff is unable to show prejudice, remand is not warranted).

The defendant asserts that the plaintiff's use of Howard is misplaced.  The defendant notes that the plaintiff was permitted to cross-examine the VE in this matter, and the plaintiff just disagrees with the ALJ's rejection of portions of the VE's testimony.  Citing to Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986), the defendant indicates that the ALJ is the one to weigh the evidence and resolve any testimony conflicts.  It is not the job of the plaintiff or the reviewing court to do so.

The defendant's reliance on Pinion is misplaced.  The Court in Pinion found that the testimony of the VE, which was based on the opinion of a specific doctor, was not bolstered by the evidence.  That is not the case here.  In this matter, the opinions of other VEs regarding an individual being off task that were relied upon by the ALJ in reaching her decision were not in the record and were not evidence.

Here, the issue is not whether the ALJ erred in discounting the VE's testimony, rather, whether the ALJ erred by relying on evidence not in the record in reaching her decision.  The ALJ in this matter improperly relied on opinions of VEs not in evidence in this matter in forming her opinion.  In Marin, the plaintiff was prejudiced by not being permitted to ask non-hypothetical questions of the VE.  Here, the plaintiff was prejudiced by not being allowed to ask any questions of the VEs upon whom the ALJ relied in forming her opinion.  See Marin at 1266.

Moreover, similar to the cases of <u>Demenech</u> and <u>Howard</u>, here the ALJ abused her discretion because she relied on the testimony of VEs that were not part of the evidence or record in making her decision.  The plaintiff was denied the right to cross examine the VEs that did not participate in the hearing and whose opinions were not part of the evidence or the record. <u>See</u> Demenech at 884-85, <u>see also Howard</u> at 1302.

In accordance with the foregoing, the undersigned finds that the ALJ erred in her reliance on opinions not part of the evidence or in the record in this matter and the case should be remanded.

## II. The ALJ's RFC Finding and Hypothetical Question Posed to the VE

The ALJ found the plaintiff had a moderate impairment in adapting or managing himself. (Tr. 27).  This assessment includes: (1) responding to demands; (2) adapting to changes; (3) managing psychologically based symptoms; (4) distinguishing between acceptable and unacceptable work performance; (5) setting realistic goals; (6) making plans for oneself independently of others; (7) maintaining personal hygiene and attire appropriate for a work setting; and (8) being aware of normal hazards and taking appropriate precautions.  20 C.F.R. Pt. 404, Subpt. P. App.1 Section 12.00 E, 4.   The ALJ's RFC assessment referenced limitations in interacting and relating to others, understanding, remembering and applying information, and concentrating, persisting and maintaining pace. (Tr. 26-27).

The ALJ specifically found that the plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: never have exposure to hazardous machinery/mechanical parts, work at unprotected heights, and operating a motor vehicle."  (Tr. 27).  The ALJ further found that the plaintiff could "understand and carry out simple and detailed but uninvolved oral, written and diagrammed instructions; but not at a

production rate or pace. He is occasionally able to interact with co-workers, supervisors, and the public." Id.  Finally, the ALJ found that the plaintiff could "maintain concentration for at least 2 hours at a time and be on task for 97 percent of the day."  Id.

Under SSR 96-8p, an RFC by an ALJ must be based on all the pertinent evidence in the record, including daily living activities, lay evidence, observations that are recorded, and statements by medical sources.  SSR 96-8p indicates that an ALJ must denote a person's ability to do work activities in a regular work setting on a regular basis.  Under SSR 96-8p, an ALJ must also indicate the highest amount of each work-related activity the person can do based on the evidence that is contained in the record.  SSR 96-8p.  This should include both exertional and non-exertional areas, and the ALJ should note how he considered and resolved inconsistencies in the record. Id.

The plaintiff asserts that although the ALJ characterized the plaintiff's moderate impairment in adapting or managing oneself, the ALJ erred by failing to include any limitation that could reasonably be associated with adapting or managing oneself.

The defendant asserts that the ALJ's assessment regarding the plaintiff's moderate difficulties in adapting and managing oneself was one of four functional areas made pursuant to the Psychiatric Review Technique (PRT).  The defendant further asserts that the "[p]laintiff seems to suggest that the ALJ was required to expressly identify RFC limitations for each PRT ratings in the four functional areas, or otherwise directly incorporate the PRT findings into the RFC."  (Def. Br. at 12-13).  The defendant also asserts that, as noted by the ALJ, "PRT ratings are not an assessment of a claimant's RFC; instead, they are used to rate the severity of a claimant's mental impairments at steps two and three of the sequential evaluation process." (Def. Br. at 13).  Moreover, the defendant asserts that the ALJ properly found that the plaintiff did not

have impairments that met or equaled a listed impairment.  The defendant argues that the RFC

finding by the ALJ adequately accounted for the plaintiff's PRT ratings, which included the

moderate limitations in adapting and managing oneself because the ALJ's assessment of the

plaintiff's mental limitations is supported by the record, and the ALJ was not required to assign

an RFC limitation to each of the four functional areas listed in the PRT.

An ALJ is required to pose a hypothetical question to a VE that completely describes the

plaintiff's impairments.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) (because the

hypothetical question on which the expert testimony was based did not presume the presence of

psychological problems, which were found sever by the ALJ, the ultimate decision lacked a basis

on substantial evidence).  See also McCloud v. Barnhart, 166 F. App'x 410, 419 (11th Cir. 2006)

(a hypothetical was possibly deficient and warranted remand when the ALJ did not include GAF

scores between 41 and 50 and did not clearly articulate the weight assigned to two doctors).  In

Windchill v. Comm'r of Soc. Sec., 631 F.3d 1176 (11th Cir. 2015), the Eleventh Circuit held that

"[b]ecause the ALJ asked the vocational expert a hypothetical question that failed to include or

otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony

is not 'substantial evidence' and cannot support the ALJ's conclusion that Winschel could

perform significant numbers of jobs in the national economy."  Winschel at 1181.

Here, the ALJ posed the following hypothetical to the VE.

Assume a hypothetical individual of the claimant's age and education, with the past
jobs that you've described. Further, assume for this hypothetical, the individual has
no exertional limits. However, this individual can have no exposure to hazardous
machinery or mechanical parts, and no unprotected heights; no requirement to
operate a motor vehicle on the job. Assume this hypothetical individual can
understand and carry out simple and detailed, but uninvolved, oral and written and
diagrammed instructions, but not at a production rate or pace. This individual could
occasionally interact with coworkers, supervisors, and the public, and can maintain
concentration for at least two hours at a time; on task 97 percent of the workday.

Stated differently, off-task three percent of the workday. Would a person with these kinds of abilities be able to perform the claimant's past work?

The hypothetical posed by the ALJ to VE at the ALJ hearing did not include any of the plaintiff's managing and adapting oneself restrictions.  In the <u>Winschel</u> case, "the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." <u>Winschel</u> at 1181. The court found that Winschel's limitation should have been included in the ALJ's hypothetical question to the VE, and the Court reversed and remanded.  <u>Id</u>.  Moreover, under SSR 96-8, an RFC finding by an ALJ must be based on all the pertinent evidence in the record.  This evidence should include daily living activities, lay evidence, observations that are recorded, and statements by medical sources.  Accordingly, all of the plaintiff's impairments must be accounted for in the RFC finding as well as the hypothetical posed by the ALJ to the VE.  Under the pertinent law, the RFC must include all of the plaintiff's impairments and the ALJ must pose a hypothetical question to the VE that specifically accounts for all of the plaintiff's impairments.  In other words, the hypothetical posed to the VE and the RFC determination in this matter should have included all of the plaintiff's limitations. Accordingly, the undersigned recommends that the matter be reversed and remanded.  Both the RFC and the hypothetical question posed to the VE should account for all of the plaintiff's limitations, including the plaintiff's limitation in adapting and managing himself.

## CONCLUSION

In conclusion, the undersigned finds that the plaintiff should have been afforded the opportunity to cross-examine the VEs whose opinions the ALJ relied on in her decision making process.  The RFC and the hypothetical posed to the VE by the ALJ should have included all of the plaintiff's limitations, including those limitations with respect to adapting and managing himself.  Accordingly, the undersigned recommends remand of this matter.

## RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned respectfully recommends that the plaintiff's Motion for Summary Judgment (DE #21, 5/7/2021) be **GRANTED**, the defendant's Motion for Summary Judgment (DE # 26, 6/4/2021) be **DENIED** and the matter be **REMANDED** for further proceedings.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir.

2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir.

1989); 11th Cir. R. 3-1 (2016).

      RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 2nd

day of November 2021.

                              _____

                              JOHN J. O'SULLIVAN

                              CHIEF UNITED STATES MAGISTRATE JUDGE